# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# MARTINSBURG

| | |
|---|---|
| **DONALD LEE TAYLOR,** | |
| Plaintiff, | |
| v. | Civil Action No.: 3:15-CV-120 (GROH) |
| **JIM RUBENSTEIN, et al.,** | |
| Defendants. | |

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

On October 23, 2015, Plaintiff Donald Lee Taylor, acting *pro se*, filed a civil rights action [ECF No. 1] against the named Defendants pursuant to 42 U.S.C. § 1983, alleging violations of his right to adequate medical care. After initial screening of the Complaint, the Court entered an Order to Answer [ECF No. 24] on March 11, 2016, directing Defendants to answer to the allegations contained in the Complaint. Subsequently, Defendants answered the Complaint by filing two Motions to Dismiss [ECF Nos. 35 & 41] the Complaint. After Defendants' Motions were filed, the Court entered Roseboro Notices [ECF Nos. 38 & 43], informing Plaintiff of his right and obligation to respond to the two Motions. On May 2, 2016, Plaintiff filed his Response in Opposition [ECF No. 52] to both of Defendants' Motions to Dismiss.

On April 26, 2016, Plaintiff filed a Motion to Amend [ECF No. 49] his Complaint, which was granted. Plaintiff filed his Amended Complaint [ECF No. 51] on April 28, 2016. Subsequently, Defendants filed two Motions to Dismiss [ECF Nos. 54 & 57] the

Amended Complaint. The Court entered Roseboro Notices [ECF No. 56 & 59] after the filing of each Motion to Dismiss. On June 6, 2016, Plaintiff filed his Response [ECF No. 62] to both of Defendants' Motions.

On August 26, 2016, Plaintiff filed a Motion [ECF No. 66] for a preliminary injunction.[1] On September 9, 2016, Defendants filed a Response [ECF No. 68] to Plaintiff's Motion, which Plaintiff followed up with a Reply [ECF No. 72].

The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, the undersigned recommends that the Amended Complaint be dismissed.

## II.  **BACKGROUND**

According to the Amended Complaint, Plaintiff, a federal inmate, was diagnosed with Hepatitis C on or about November of 1999 while serving time at the Mount Olive Correctional Complex. See ECF No. 51 at 10. Plaintiff's Hepatitis C, an infectious disease that primarily affects the liver, causes chronic pain in the right side of his abdomen. Id.

In the early 2000s, Plaintiff sought treatment of his Hepatitis C from a gastroenterologist, Mohamad R. Sankari, M.D. Id. His treatment included PegIntron and ribavirin,[2] two prescription medications. Id. However, after his treatment was complete, Plaintiff "relapsed . . . with no other options until development[ ] of new treatments." Id.

---

[1] Plaintiff previously filed a Motion [ECF No. 18] for a preliminary injunction on January 8, 2016, which was denied. The undersigned notes that Plaintiff's second Motion [ECF No. 66] is virtually identical to his first Motion.
[2] Plaintiff alleges that he was prescribed Ribaudrin. ECF No. 51 at 10. However, because no such medication exists, the undersigned assumes that Plaintiff intended to refer to ribavirin.

On April 7, 2014, after Plaintiff was released on parole, he sought treatment of his Hepatitis C from Steven R. Matulis, M.D., another gastroenterologist. Id. Dr. Matulis performed a biopsy of Plaintiff's liver, finding that, on a scale of zero through four, his inflammation was a two and his "fibrosis (scarring of liver)" was a four. Id. Therefore, Dr. Matulis determined that Plaintiff was a candidate for a new Hepatitis C treatment.[3] Id.

However, on or about May 20, 2014, Plaintiff was incarcerated at the Saint Marys Correctional Center in West Virginia for a parole violation. Id. at 11. In April of 2015, Plaintiff was examined by Defendant Policaripo at the Correctional Center. Id. Plaintiff alleges that, while Dr. Policaripo determined that Plaintiff should receive the new treatment, Dr. Policaripo informed him that he could not receive the treatment due to "cost reasons." Id. On July 10, 2015, after Plaintiff filed several unsuccessful grievances, Plaintiff received a letter from Defendant Hissom, RN, BSN, the Director of Inmate Health Services, stating that:

> As an inmate, you will have access to the necessary healthcare while incarcerated. The medical provider at the facility will evaluate and treat you appropriately. . . . I have reviewed your lab work, as well as your liver biopsy, and you do not meet [the] criteria for HCV treatment at this time. Your lab work is slightly elevated, but stable, and your liver biopsy from one year ago showed stage II fibrosis. Individuals with stage II fibrosis are not recommended for treatment. In accordance with policy, you are to be seen in [the] Chronic Care Clinic every 6 months, and you were last seen in March. If you are having further issues, please place a Health Services Request to be evaluated by the provider.[4]

Id.; ECF No. 51-1 at 4.

---

[3] In his pending Motion [ECF No. 66] for a preliminary injunction, Plaintiff alleges that Harvoni, a prescription medication, is the new treatment for Hepatitis C, which he calls "a medical breakthrough." ECF No. 66 at 3.

[4] The undersigned emphasizes that Defendant Hissom does not appear to have been directly involved with Plaintiff's medical care but simply reviewed his medical file in order to respond to the filed grievances.

Subsequently, Plaintiff was transferred to the Northern Correctional Facility in Moundsville, West Virginia.[5] ECF No. 51 at 4. Because he is still not receiving the new Hepatitis C treatment, Plaintiff alleges that he is suffering from, *inter alia*, progressing liver damage, extreme pain in the right side of his abdomen, and extreme emotional and psychological distress related to losing his window of opportunity for treatment. Id. at 13.

### III. DISCUSSION

#### A. The Amended Complaint

In the Amended Complaint, Plaintiff asserts that all Defendants acted with deliberate indifference to his serious medical needs for Hepatitis C and the associated pain treatment, in violation of the Eighth Amendment as incorporated through the Fourteenth Amendment. ECF No. 51 at 7-8. Plaintiff seeks a declaration that his constitutional rights were violated, injunctive relief and compensatory and punitive damages. Id. at 9.

#### B. Legal Standards

##### 1. Section 1983 Claims

Plaintiff is seeking relief pursuant to 42 U.S.C. § 1983. ECF No. 51 at 1. Section 1983 states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983.

---

[5] Plaintiff alleges that the acts giving rise to the Amended Complaint started at the Saint Marys Correctional Facility and "carried over" to the Northern Correctional Facility. ECF No. 51 at 4.

### 2. Sufficiency of a Complaint

Whether a complaint is legally sufficient is measured by whether it meets the standards for a pleading stated in the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 8 (providing general rules of pleading), Fed. R. Civ. P. 9 (providing rules for pleading special matters), Fed. R. Civ. P. 10 (specifying pleading form), Fed. R. Civ. P. 11 (requiring the signing of a pleading and stating its significance) and Fed. R. Civ. P. 12(b)(6) (requiring that a complaint state a claim upon which relief can be granted). See Francis v. Giacomelli, 588 F.3d 186 (4th Cir. 2009).

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a case when a complaint fails to state a claim upon which relief can be granted. Dismissal under Rule 12(b)(6) is inappropriate unless it appears beyond doubt that the plaintiff cannot prove any set of facts to support his or her allegations. Revene v. Charles County Comm'rs., 882 F.2d 870 (4th Cir. 1989). Courts, however, are not required to accept conclusory allegations couched as facts and nothing more when ruling on a motion to dismiss pursuant to 12(b)(6). A complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. In addition to pleading sufficiently specific factual allegations, a plaintiff must assert a plausible claim in the complaint that is based on cognizant legal authority. Ashcroft v. Iqbal, 556 U.S. 662 (2009) ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." Id.

Because Plaintiff is proceeding *pro se*, the Court is required to liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); Haines v. Kerner, 404 U.S. 519 (1972) (*per curiam*); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978); Gordon v. Leeke, 574 F.2d 1147 (4th Cir. 1978). While *pro se* pleadings are held to a less stringent standard than those drafted by attorneys, Haines, 404 U.S. at 520, even under this less stringent standard, a *pro se* complaint is still subject to dismissal. Id. at 520-21. The mandated liberal construction means only that if the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999). However, a court may not construct the plaintiff's legal arguments for him or her. Small v. Endicott, 998 F.2d 411 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." Beaudett v. City of Hampton, 775 F.2d 1274 (4th Cir. 1985).

**C.    Analysis of the Amended Complaint**

   **1.    The Defendants**

Plaintiff has named the following Defendants in the Amended Complaint: (1) Jim Rubenstein, Commissioner of the West Virginia Division of Corrections; (2) Patrick Mirandy, Warden of the Saint Marys Correctional Center; (3) Debbie Hissom, Director of Inmate Health Services at the Saint Marys Correctional Center; (4) Dr. Policaripo of Wexford Health Services; (5) Melissa Wadsworth, Health Services Administrator of the Saint Marys Correctional Center; (6) AIG Property and Casualty Insurance Company ("AIG Insurance") and (7) John Doe/Wexford Health Sources, Inc. ECF No. 51 at 1. Plaintiff is suing these Defendants in their individual and official capacities. Id. at 8.

Initially, the undersigned notes that the summons was returned unexecuted as to AIG Insurance and that Plaintiff does not appear to have made any additional effort to bring AIG Insurance into the instant action. Therefore, dismissal of Plaintiff's claim against AIG Insurance is warranted due to Plaintiff's failure to prosecute. Brown v. Cameron-Brown Co., 652 F.2d 375, 379 (4th Cir. 1981) (stating that a *sua sponte* dismissal of an action for failure to prosecute is "within [the] ambit" of Federal Rule of Civil Procedure 41(b)).

Additionally, the undersigned finds that Plaintiff's claims against the remaining Defendants in their official capacities are improper. A defendant in a Section 1983 action must be a "person" acting under color of state law. 42 U.S.C. § 1983. However, "neither a State nor its officials acting in their official capacities are "persons" under [Section] 1983." Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). Therefore, Plaintiff's claims against Defendants in their official capacities should be dismissed. Accordingly, the undersigned will examine Plaintiff's claims against the remaining Defendants in their individual capacities.[6]

### a. Plaintiff's Claims against Defendants Rubenstein, Mirandy, Hissom and Wadsworth

Liability under 42 U.S.C. § 1983 is "personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir.2001) (internal citation omitted). Thus, in order to establish liability under Section 1983, a plaintiff must specify the acts taken by each defendant which violate his or her constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Colburn v. Upper Darby

---

[6] The undersigned also notes that Defendants deny that Plaintiff exhausted his administrative remedies. ECF No. 51 at 4-5; ECF No. 58 at 2. Notwithstanding this argument, for the sake of completeness, the undersigned will analyze each of Plaintiff's claims.

Township, 838 F.2d 663, 666 (3rd Cir. 1988). *Respondeat superior* cannot form the basis of a claim for a violation of a constitutional right under Section 1983. Rizzo v. Good, 423 U.S. 362 (1976). To establish that a supervisor should be held liable under Section 1983 for his or her actions, a plaintiff must show:

> (1) that the supervisor had actual or constructive knowledge that h[er] subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff;
>
> (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and
>
> (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Wilkins v. Montgomery, 751 F.3d 214, 226 (4th Cir. 2014) (internal citations omitted).

The undersigned finds that Plaintiff's claims against Defendants Rubenstein, Mirandy, Hissom and Wadsworth are improper. Plaintiff asserts no personal involvement on the part of Defendants in the alleged violation of his constitutional rights. For example, Plaintiff does not assert that these Defendants ever treated him or were specifically involved in his medical care.[7] To the contrary, Plaintiff attempts to establish liability by challenging Defendants' policy of not treating inmates with stage II fibrosis of the liver with the new Hepatitis C treatment, a policy that Defendants enforced in their supervisory capacities. However, Plaintiff has not met the prerequisites to establishing

---

[7] Although Defendant Hissom responded to Plaintiff's filed grievances, her actions do not rise to the level of personal involvement in Plaintiff's care. Paige v. Kupec, No. CIV.A. AW-02-3430, 2003 WL 23274357, at *1 (D. Md. Mar. 31, 2003), aff'd, 70 F. App'x. 147 (4th Cir. 2003) (stating that involvement in the administration remedy procedure does not equate to personal involvement for the purposes of Section 1983).

8

supervisor liability. Plaintiff has not even shown that he suffered a constitutional injury.[8] See infra Part III.C.2 (stating that, at most, Plaintiff established a medical negligence claim, which is not cognizable under the Eighth Amendment). Therefore, Plaintiff's claims against Defendants Rubenstein, Mirandy, Hissom and Wadsworth must fail.

### b. Plaintiff's Claim against Defendant John Doe/Wexford Health Sources

As previously discussed, liability under 42 U.S.C. § 1983 is "based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir.2001) (internal citation omitted). It is not definitively clear from the Amended Complaint whether Plaintiff is suing an employee of Wexford Health Sources or Wexford Health Sources itself. However, based on Plaintiff's statements that John Doe/Wexford Health Sources is a "medical inc. who provides inadequate medical care," the undersigned assumes Plaintiff is suing Wexford Health Sources as a private corporation. ECF No. 51 at 3.

"A private corporation [which is a state actor] is liable under § 1983 only when an official policy or custom of the corporation causes the alleged deprivation of federal rights." Austin v. Paramount Parks, Inc., 195 F.3d 715, 728 (4th Cir.1999). In this case, Plaintiff alleges that Wexford Health Sources "would not treat [him] with the new Hep (C) treatment due to 'cost reasons.'" ECF No. 51 at 11 (emphasis removed). However, Plaintiff has not established that Wexford Health Sources would not treat him due to an official policy, leaving the Court to speculate whether such a policy existed. Perhaps there was no official policy and Wexford Health Sources was only temporarily financially

---

[8] Defendants Rubenstein, Mirandy and Hissom claim that they are entitled to qualified immunity. ECF No. 36 at 6-7. However, because the undersigned finds that Plaintiff did not suffer a constitutional injury, the issue of qualified immunity does not need to be addressed at this time.

9

incapable of providing the new treatment to inmates. If there was an official policy, Plaintiff does not state what that policy is. For example, Plaintiff did not explain if the policy required the categorical denial of the new Hepatitis C treatment to all inmates or only to certain inmates based on their specific medical condition. Nevertheless, Plaintiff has not shown that a deprivation of his federal rights occurred. See infra Part III.C.2 (stating that, at most, Plaintiff established a medical negligence claim). Therefore, Plaintiff's claims against Defendant John Doe/Wexford Health Sources fails.

### c. Plaintiff's Claim against Defendant Policaripo

Because Plaintiff alleged that Defendant Policaripo was personally involved in his care, Defendant Policaripo does not contest that he is a proper defendant in this action. ECF Nos. 42 & 58. Instead, Defendant Policaripo argues that Plaintiff's claims have no merit. Id. Therefore, the undersigned will examine the merits of Plaintiff's claims.[9]

### 2. The Merits of Plaintiff's Claims

Plaintiff contends that Defendants are liable under Section 1983 because they failed to adequately treat his Hepatitis C and the pain caused by the condition, violating his constitutional right to effective medical assistance. ECF No. 51 at 7-8. To state a claim under the Eighth Amendment for ineffective medical assistance, Plaintiff must show that Defendants acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). Therefore, Plaintiff must first show that his medical condition is objectively serious. Then, he must demonstrate that Defendants "kn[ew] of and disregard[ed] an excessive risk to [his] health or safety."

---

[9] The undersigned notes that Plaintiff is asserting that all Defendants acted with deliberate indifference to his serious medical needs. Therefore, even though Plaintiff's only surviving claim at this point is against Defendant Policaripo, the undersigned will nevertheless examine the merits of all of Plaintiff's claims.

10

Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). However, evidence establishing medical negligence or incompetence in the treatment of an inmate's condition does not constitute an excessive risk to the inmate's health or safety. Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

In the present case, the undersigned finds that Plaintiff has failed to state a claim under the Eighth Amendment for ineffective medical assistance. While Plaintiff established that he suffers from Hepatitis C, an objectively serious medical condition, he failed to establish that Defendants acted with deliberate indifference to his medical needs. Plaintiff is being seen at a Chronic Care Clinic every six months and is receiving medical care. Plaintiff's specific complaint is that he is not receiving the particular new Hepatitis C treatment he desires. While Plaintiff alleges that, when he arrived at Saint Marys Correctional Center after his parole was revoked, Defendant Policaripo determined that he should receive some type of Hepatitis C treatment,[10] he also submitted a letter from Defendant Hisson stating that he is not a candidate for Hepatitis C treatment. Specifically, Defendant Hisson stated that she had reviewed Plaintiff's bloodwork, which was slightly elevated but stable, and liver biopsy results, which showed stage II fibrosis, and that "[i]ndividuals with stage II fibrosis are not recommended for [Hepatitis C] treatment."

As this Court has previously explained, a difference of opinion between Plaintiff's private physician and the Correctional Center medical personnel is not, in and of itself, evidence of deliberate indifference. ECF No. 40 at 6. Moreover, a

---

[10] It is unclear what treatment in particular was to be prescribed.

11

difference of opinion between medical personnel and an inmate is not evidence of deliberate indifference. Moore v. Fed. Bureau of Prisons, No. CIV.A. 2:06 CV 71, 2009 WL 361141, at *7 (N.D. W. Va. Feb. 3, 2009), aff'd, 332 F. App'x. 75 (4th Cir. 2009) (stating that "exceptional circumstances [must be] alleged" for a disagreement between an inmate and medical personnel over the inmate's medical care to be cognizable under the Eighth Amendment). Therefore, because Plaintiff offers no facts to show that the treatment decisions of the Correctional Center medical personnel constitute an excessive risk to his health or safety, he has at most established a medical negligence claim, which is not cognizable under the Eighth Amendment.[11] Id. (stating that a disagreement between physicians "is a classic example of a matter for medical judgment" and that "courts will not intervene upon allegations of mere negligence, mistake or difference of opinion") (internal citations omitted). As a result, the Amended Complaint should be dismissed.

## IV. RECOMMENDATION

For the foregoing reasons, it is hereby **RECOMMENDED** that Defendants' Motions to Dismiss [ECF Nos. 54 & 57] the Amended Complaint be **GRANTED** and that the Amended Complaint [ECF No. 51] be **DISMISSED**. It is further **RECOMMENDED**

---

[11] Plaintiff's pending Motion [ECF No. 66] for a preliminary injunction sheds light on the Amended Complaint. When reviewed together, it is clear that Plaintiff believes Defendants acted with deliberate indifference to his medical needs because they are not treating him with Harvoni, even though inmates in other institutions have received such treatment. ECF No. 66 at 3. However, as this Court has previously explained, "the mere fact that inmates in other institutions are treated with Harvoni, or some other kind of Hepatitis C treatment, does not require the Defendants to provide the same treatment to Plaintiff." ECF No. 40 at 7 (stating that "[p]hysicians consider numerous variables in determining proper—and effective—forms of treatment for their patients" and that "a treatment that proves successful for one patient does not always yield positive results for another"). To the contrary, Plaintiff was required to establish that the Correctional Center physicians' failure to treat him with Harvoni constituted an excessive risk to his health and safety, which he failed to do.

that Defendants' Motions to Dismiss [ECF Nos. 35 & 41] the original Complaint and Plaintiff's pending Motion [ECF No. 66] for a preliminary injunction be **DENIED AS MOOT**.

Within fourteen (14) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Gina M. Groh, Chief United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to provide a copy of this Report and Recommendation to the Plaintiff by certified mail, return receipt requested, and all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia. Respectfully submitted this 1st day of December, 2016.

_____
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE